**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

| | | |
|---|---|---|
| **Norman Johnson** | : | **CIVIL ACTION NO.** |
| | : | **3:13cv-01531 WWE** |
| Plaintiff | : | |
| vs. | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| **Stephen D. Perry** | : | **JANUARY 31, 2014** |
| Defendant | : | |
| | : | |

**<u>DEFENDANT'S MEMORANDUM OF LAW IN SUPPORT OF</u>**
**<u>MOTION TO DISMISS</u>**

Plaintiff, a Middletown resident and father of a student attending Capital Preparatory Magnet School, brings this complaint arising out of his alleged banishment from school activities. Specifically, the plaintiff claims that he was deprived of his right to peaceful assembly in violation of the First Amendment to the United States Constitution as enforced by Sections 1983 and 1988 of Title 42 of the United States Code (Count One); deprived of his right to equal protection of the laws, in violation of the Fourteenth Amendment to the United States Constitution as enforced by Sections 1983 and 1988 of Title 42 of the United States Code (Count Two); deprived of his liberty without due process of law, in violation of the Fourteenth Amendment to the United States Constitution as enforced by Sections 1983 and 1988 of Title 42 of the United States Code (Count Three); and was subjected to extreme and outrageous conduct by the defendant, which caused emotional distress (Count Four).

The plaintiff's claims fail as a matter of law.  Specifically, as to Count One, there can be no deprivation of plaintiff's right to peaceful assembly in violation of the First Amendment given that plaintiff has no First Amendment right to attend school events; as to Count Two, the plaintiff has failed to allege facts which, even if taken as true, would establish that he was treated differently than other similarly situated individuals when he was excluded from various school activities; as to Count Three, the plaintiff has no liberty interest in attending school events and even if he did, he has failed to identify and allege what process he was denied; and as to count Four, the plaintiff has failed to state a claim for intentional infliction of emotional distress given that the conduct alleged is not extreme and outrageous.

## I.    FACTS PRESENTED[1]

In the September 23, 2013 complaint, the plaintiff alleges the following facts:

The defendant Stephen Perry, principal at Capital Preparatory School, recruited his daughter to play varsity basketball in an effort to fill his team roster and win the state basketball championship.  Complaint, Count One, ¶ 5.  Mr. Perry knew that his daughter was not good enough to play varsity basketball and that she wanted to play only Junior Varsity; Mr. Perry pressured her to remain on the varsity team; and Mr. Perry summoned plaintiff's daughter to a meeting where he cajoled and badgered her.  Complaint, Count One, ¶ 7.  Mr. Perry then summoned the plaintiff and his wife to a similar meeting wherein the plaintiff asked Mr. Perry to stop pressuring his daughter into playing varsity basketball.

---

[1] Defendant accepts the facts as alleged by the plaintiff for purposes of this motion, only. Further, plaintiff alleges the identical facts in each of the four counts of the complaint.

Complaint, Count One, ¶ 8.  After the meeting, during which the plaintiff raised his voice and told the defendant he was a liar, plaintiff was banned from school events[2], both at the school and elsewhere, including a basketball game at the Mohegan Sun casino.  Complaint, Count One, ¶ 11, 12.  Such a banishment was never before imposed on a parent.  Complaint, Count One, ¶ 11.

## II.    ISSUES PRESENTED

A.    Whether, as alleged in the first count, the plaintiff was deprived of his right to peaceful assembly in violation of the First Amendment when he was banned from school events?

B.    Whether, as alleged in the second count, the plaintiff was deprived of his right to equal protection of the laws when he was banned from school events and where he has failed to identify any other parent who was similarly situated who was treated more favorably in a similar situation?

C.    Whether, as alleged in the third count, the plaintiff was deprived of liberty without due process of law, in violation of the Fourteenth Amendment to the United States Constitution, when he was banned from school events?

D.    Whether, as alleged in the fourth count, the defendant's conduct in banning plaintiff from school events was sufficiently extreme and outrageous such that plaintiff has made a viable Intentional Infliction of Emotional Distress claim?

## III.   LEGAL ARGUMENT

## A.    <u>Standard of Review</u>

The purpose of a Rule 12(b)(6) motion to dismiss is to test the legal sufficiency of a complaint in order to eliminate those actions where "it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations." *Neitzke v. Williams*, 490 U.S. 319, 326-27, 109 S. Ct. 1827 (1989) (internal quotations and citations omitted).  A complaint must be dismissed for failure to state a claim upon

---

[2] Plaintiff was not, however, banned from commencement ceremonies.  (Complaint, Count One, §11)

which relief can be granted if it does not plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 127 S.Ct. 1955, 1974 (2007); *see also Ashcroft v. Iqbal*, 566 U.S. 662, 129 S.Ct. 1937, 1949 (2009). A complaint must set forth allegations that are enough to "raise a right to relief above the speculative level." *Id.* 127 S.Ct. at 1974. "[T]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Harris v. Mills*, 572 F.3d 66, 72 (2d Cir. 2009) (quoting *Iqbal*, 129 S.Ct. at 1949). The court must eschew "… any reliance on bald assertions, unsupportable conclusion, and 'opprobrious epithets." *Lindner Dividend Fund, Inc. v. Ernst & Young*, 880 F.Supp. 49, 53 (D. Mass. 1995) (quoting *Chrongris v. Board of Appeals*, 811 F.2d 36, 37 (1st Cir. 1987), *cert. denied*, 483 U.S. 1021 (1987)).

Since only a complaint that states a plausible claim for relief survives a motion to dismiss, determining whether a complaint states a plausible claim for relief is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 129 S.Ct at 1949; *see also*, *Francis v. Giacomelli*, 588 F.3d 186, 193 (4th Cir. 2009) (holding that where well-pleaded facts did not permit the court to infer more than the mere possibility of misconduct, the complaint had alleged, but not shown, that the pleader is entitled to relief as is required by Federal Rule of Civil Procedure 8). A claim is facially plausible when it "allows the court to draw the reasonable inference that the defendant is liable for the misconduct." *Id*. at 1949. "The plausibility standard is not akin to a 'probability requirement', but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id*.

4

In deciding a motion to dismiss, the court must view the "facts alleged in the complaint as true and draw all reasonable inferences in favor of [the] plaintiff." *Railea v. United States*, 355 F.3d 118, 119 (2d Cir. 2004). The plaintiff must provide grounds for the relief and neither "labels and conclusions" nor "a formulaic recitation of the elements of a cause of action" will suffice. *Bell Atlantic Corp.*, 127 S.Ct. at 1265.

## B. The plaintiff's right to peaceful assembly has not been violated given that plaintiff has no First Amendment right to attend school events on or off school property.

### 1. Events on school property

In Count One, the plaintiff claims that his right of peaceful assembly, in violation of the First Amendment, has been violated. Specifically, the plaintiff claims that he has been banned from all school events, except commencement, a banishment never imposed before on any parent.

The First Amendment does not guarantee access to property simply because it is owned or controlled by the government. *USPS v. Council of Greenberg Civic Ass'ns,* 453 U.S. 114, 129, 101 S.Ct. 2676 (1981). Courts have long held that state and local officials are empowered to take action to preserve order and tranquility on school property. *Carey v. Brown*, 447 U.S. 455, 470-71 (1980). (noting that state officials are not "powerless" to protect the public from "boisterous and threatening conduct that disturbs the tranquility of" schools); *Goss v. Lopez,* 419 U.S. 565, 582–83 (1975) (holding that students who pose a "continuing danger to persons or property or an ongoing threat of disrupting the academic process may be immediately removed from school"). Further, under Connecticut law, management and maintenance of schools is a local matter. *See* Conn. Gen.Stat. §§ 10–220

(providing that local school boards "shall have the care, maintenance, and operation of buildings ... and other property used for school purposes ...."), 10–221 (providing that boards of education have authority to prescribe rules for management and discipline within public schools). Moreover, with respect to the First Amendment, "public secondary and elementary school administrators are granted more leeway" than even public colleges and universities. *Sypniewski v. Warren Hills Regional Bd. of Educ.,* 307 F.3d 243, 260 (3d Cir.2002) (regarding school disciplinary rules). Accordingly, school officials "have the authority and responsibility for assuring that parents and third parties conduct themselves appropriately while on school property." *Lovern v. Edwards,* 190 F.3d 648, 655 (4th Cir.1999) (All as cited in *Nowacki v. Town of New Canaan*, 2013 WL 785355 * 4 (D.Conn.))(attached as Exhibit A).

The right to freedom of assembly is a right cognate to those of free speech. *DeJonge v. Oregon*, 299 U.S. 353, 364 (1937). As with the right to free speech, the level of protection it provides depends on the forum. *Cornelius v. NAACP Legal Defense & Educ. Fund, Inc.,* 473 U.S. 788, 799-800 (1985). ("Nothing in the Constitution requires the Government freely to *grant access* to all who wish to exercise their right to free speech on every type of Government property without regard to the nature of the property or to the disruption that might be caused by the speaker's activities." (emphasis added)). With regard to nonpublic fora, "the government enjoys greater latitude ... and may limit access or content based on subject matter and speaker identity so long as the distinctions drawn are reasonable in light of the purpose served by the forum and are viewpoint neutral." *Byrne v. Rutledge,* 623 F.3d 46, 54 (2d Cir.2010) (quoting *Cornelius,* 473 U.S. at 806). A school is

generally considered a non-public forum, as it is a place in which the government does no more than reserve eligibility for access to the forum to a particular class of speakers, whose members must then, as individuals, obtain permission to use it.  *DeFabio v. E.Hampton Union Free Sch. Dist.,* 658 F.Supp.2d 461, 473 (E.D.N.Y. 2009).

The plaintiff's complaint fails to plausibly allege that his restricted access to school events was not reasonable or viewpoint neutral.  The Tenth Circuit has held that the right to freedom of assembly was not violated even where parents were not allowed to attend Board meetings or to go onto school property for any school or community event.  *McCook v. Spriner Sch. Dist.,* 44 Fed. Appx. 896, 910 (10th Cir. 2002).  In *McCook*, the court noted that the parent-plaintiffs failed to present any authority establishing a constitutional right to go onto school property, and further held that the parents' claim that they could not go onto school property to vote did not implicate the freedom of assembly because "they could have voted in person or through the mail, via absentee ballot."   Id. at 910-911, as cited in *Nowacki v. Town of New Canaan*, 2013 WL 785355 *11 (D.Conn. March 1, 2013)(attached as Exhibit A).

In *Nowacki v. Town of New Canaan*, the plaintiff alleged that his right to freedom of assembly was violated when Board of Education defendants restricted his access to school property to attend banquets, school plays and parenting events.[3]  In granting the town defendants' motion to dismiss, the court cited to *McCook*, stating that the complaint failed to plausibly allege that this restricted access was not reasonable or viewpoint neutral.  The court further held that the plaintiff failed to present any authority

---

[3] Plaintiff had two children who attended school in the New Canaan school district.

establishing a constitutional right to go onto school property and that the restrictions placed on the parents in the *McCook* case were far more restrictive than what Nowacki alleged given that he was permitted on school property for certain events and at certain times. The court thus held that plaintiff's First Amendment right to assembly was not violated by the defendants.

The defendant has found no authority establishing a constitutional right to go onto school property. In addition, and as in *Nowacki*, the complaint fails to plausibly allege that plaintiff's restricted access was not reasonable or viewpoint neutral. Finally, the plaintiff concedes that he was permitted to be on school grounds for commencement – thus, the restrictions are even less than in *McCook* where the plaintiff parents were not permitted on school grounds to attend *any* events and such was not found to be a violation of the parents' First Amendment rights.

## 2. Events held off school property

Plaintiff alleges that one school event, a basketball game, was held at the Mohegan Sun Casino. Said casino is a private establishment; the law is clear that malls, restaurants and shopping plazas are not public places within the meaning of the First Amendment. See *Browne v. Ortiz,* 2009 WL 952098 (D.Conn. April 7, 2009)(attached as Exhibit B). In *Browne,* the Court granted the defendant's motion to dismiss the plaintiff's claim that his First Amendment rights to assemble and associate were violated where plaintiff alleged that the violation occurred in a Starbuck's cafe.

Unless there is dedication of a privately owned and operated shopping center or restaurant to public use, there is no entitlement to exercise First Amendment rights on the

8

premises if they are unrelated to the center's operations. *Lloyd Corp., Limited v. Tanner,* 407 U.S. 551, 551 (1972); *Hudgens v. NLRB*, 424 U.S. 507, 507 (1976). In *Browne,* the court held that "'related to the operations" does not mean a normal use of the private business, i.e., buying coffee at a café.' 2009 WL 952098 *2. Instead, "related to the operations" refers to the type of activity involved in *Amalgamated Food Employees Union Local 590 v. Logan Valley Plaza*, 391 U.S. 308, 88 S.Ct. 1601, 20 L.Ed. 2d 603 (1968), where the activity, a protest of the center's labor practices, was protected only because it was an expression referring to specific practices of the establishment. *Id.*

Property does not "lose its private character merely because the public is generally invited to use it for designated purposes. Few would argue that a free-standing store, with abutting parking spaces for customers, assumes significant public attributes merely because the public is invited to shop there." *Lloyd Corp.,* 407 U.S. at 570. Similarly, a casino does not assume significant attributes merely because the public is invited to gamble, shop, visit a restaurant or attend an event on the premises. The present complaint is simply devoid of any facts to support plaintiff's claim that his First Amendment right to assembly was violated when he was banned from a basketball game at Mohegan Sun. See also *Myers v. Township of Trumbull*, 2004 WL 904088 at *3 (D.Conn. April 25, 2004)(attached as Exhibit C), as cited in *Browne* (court held that a police officer could not violate a plaintiff's First Amendment right by evicting plaintiff from a mall, as the First Amendment does not establish the right to associate on private property.).

C. <u>**Count Two fails in that plaintiff has not alleged facts which, even if taken as true, would establish that he was treated differently than other similarly situated individuals when he was excluded from various school activities**</u>

9

In Count Two, the plaintiff alleges that he has been deprived of his right to equal protection of the laws in violation of the Fourteenth Amendment to the United States Constitution.  Specifically, he claims that he was treated differently than other parents after being banished from school events, other than commencement.  This claim under the federal constitution (brought via Section 1983) must fail as there is no valid class-of-one equal protection claim in the context of discretionary decisions made by school personnel.  Even if such a claim were to be recognized, the claim still must fail as plaintiff has provided no allegations of a specific similarly situated comparator who was treated more favorably under similar circumstances.

 1. **The Supreme Court's decision in *Engquist* applies equally to the facts herein foreclosing a class-of-one equal protection claim by a parent relative to school conditions**

"The Supreme Court in *Engquist v. Oregon Dep't of Agric.*, 553 U.S. 591, 128 S.Ct. 2146 (2008), foreclosed "class of one" claims in connection with discretionary decisions in the municipal employment context.  Although the Court has not yet ruled on class of one claims by a parent in the school context, such as those presented herein, the analysis should apply equally.

In *Engquist*, the Supreme Court declined to apply the class of one equal protection doctrine to the public employment context.  The Court reasoned that "[if] plaintiffs need not claim discrimination on the basis of membership in some class or group, but rather may argue only that they were treated by their employers worse than other employees similarly situated, any personnel action in which a wronged employee can conjure up a claim of differential treatment will suddenly become the basis for a federal constitutional claim." *Id.*

10

at 2156.  The Court distinguished the property-right type cases, which involved the uniform

application of legislation and that established the class-of-one theory of action, from the

employment context in which discretion plays an important part in each decision.  Thus, the

*Engquist* Court noted that:

> What seems to have been significant in *Olech* [*Willowbrook v. Olech*, 528
> U.S. 562, 564, 120 S.Ct. 1073 (2000)] and the cases on which it relied was the
> *existence of a clear standard against which departures, even for a single*
> *plaintiff, could be readily accessed.*  There was no indication in *Olech* that the
> zoning board was exercising discretionary authority based on subjective,
> individualized determinations – at least not with regard to easement length,
> however typical such determinations may be as a general zoning matter.
> Rather, the complaint alleged that the board consistently required only a 15-
> foot easement, but subjected *Olech* to a 33-foot easement.  This differential
> treatment raised a concern of arbitrary classification, and we therefore
> required that the State provide a rational basis for it.

*Engquist*, 128 S.Ct. at 2153-54 (emphasis supplied) (internal citations omitted).  The Court

then contrasted the *Olech* case with situations that call for discretionary decisions, and for

which the class-of-one analysis would be inappropriate:

> There are some forms of state action, however, which by their nature involve
> discretionary decision making based on a vast array of subjective,
> individualized assessments.  In such case the rule that people should be
> "treated alike, under like circumstances and conditions" is not violated when
> one person is treated differently from others, because treating like individuals
> differently is an accepted consequence of the discretion granted.  In such
> situations, allowing a challenge based on the arbitrary singling out of a
> particular person would undermine the very discretion that such state officials
> are entrusted to exercise.
>
> Suppose, for example, that a traffic officer is stationed on a busy highway
> where people often drive above the speed limit, and there is no basis upon
> which to distinguish them.  If the officer gives only one of those people a
> ticket, it may be good English to say that the officer has created a class of
> people that did not get speeding tickets, and a "class of one" that did.  But
> assuming that it is in the nature of the particular government activity that not
> all speeders can be stopped and ticketed, complaining that one has been

singled out for no reason does not invoke the fear of improper government classification.  Such a complaint, rather, challenges the legitimacy of the underlying action itself – the decision to ticket speeders under such circumstances.  … allowing an equal protection claim on the ground that a ticket was given to one person and not others, even if for no discernible or articulable reason, would be incompatible with the discretion inherent in the challenged action.  There is no proper challenge to what in its nature is a subjective, individualized decision that it was subjective and individualized.

*Id.*

Claims falling under the "class of one" theory have been recognized by the Supreme Court when the plaintiff is "intentionally treated differently from others similarly situated and ... there is no rational basis for the difference in treatment." *Village of Willowbrook v. Olech,* 528 U.S. 562, 564, 120 S.Ct. 1073, 145 L.Ed.2d 1060 (2000).  In order to succeed in a class of one claim, "the level of similarity between [the] plaintiffs and the persons with whom they compare themselves must be extremely high." *Neilson v. D'Angelis,* 409 F.3d 100, 104 (2d Cir.2005) (internal quotations omitted).

The Eastern District Court of New York in *Vassallo v. Lando*, 591 F.Supp.2d 172 (E.D.N.Y. 2008) determined that class of one equal protection claims were inapplicable to subjective decisions made by school personnel relative to school safety and welfare.  In *Vassallo,* the court addressed a claim of class of one equal protection when the principal chose to question a certain student after a fire.  In holding that the plaintiff could not state a class of one claim for being singled out to be questioned, the court noted that schools are charged with "custodial and tutelary responsibility for children.  Decisions that defendants make on a day-to-day basis to ensure the safety and welfare of the students under their care are necessarily discretionary ones…." *Id.* at 189 (citing *Vernonia Sch. Dist. 47J v. Acton,*

12

515 U.S. 646, 656, 115 S.Ct. 2386 (1995)).  The court further noted that as in *Engquist* the plaintiff's class of one claim "does not invoke the fear of improper classification" rather it simply "challenges the legitimacy of the underlying action itself."  *Id.*  As such, the court found that the "analysis in *Engquist* appears to foreclose as a matter of law a 'class of one' claim to the discretionary decisions at issue in the instant case." *Id*.

The analysis cited above applies equally to the case at hand.  In the present case, the plaintiff complains that he was treated differently than other parents in that he was prevented from attending school events.   The plaintiff also admits in his complaint that during a meeting with the defendant, he raised his voice and called the defendant a liar. Complaint, Count Two, ¶ 9.  Mr. Perry, as the principal of Capital Prep School, is charged with ensuring the safety and welfare of the students and staff within the school (a school which includes pre-kindergarten through high school grades).   Such decisions related to safety and welfare are the type of discretionary decisions that should not be subject to class of one equal protection claims.  The plaintiff is really complaining about the underlying action (i.e. that his ability to attend events was curtailed) and not differential treatment.  His claim for class of one equal protection fails as a matter of law.

### 2.   <u>The plaintiff has failed to make even a rudimentary showing of being treated differently than similarly situated individuals</u>

Even if the Court were to recognize a class of one claim in the present case, the second count still fails.  Specifically, the plaintiff's formulaic recitation that he was treated differently than other parents is insufficient to meet the pleading standards established by *Iqbal*.

To prevail on a "class of one" Equal Protection theory, the plaintiff must show that he has been "intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment." *Village of Willowbrook v. Olech,* 528 U.S. 562, 564, 120 S.Ct. 1073, 145 L.Ed.2d 1060 (2000). In general, a plaintiff's burden on a "class of one" claim is "extremely high," *Morron v. City of Middletown*, 464 F. Supp. 2d 111, 120 (D. Conn. 2006). In order to prevail on a class of one claim the plaintiff "'must show … an 'extremely high degree of similarity between [himself] and the persons to whom [he] compare[s] [himself] in order to succeed on an equal protection claim." *Doninger v. Niehoff*, 527 F.3d 41, 53 (2d Cir. 2008) (*citing) Clubside, Inc. v. Valentin,* 468 F.3d 144, 159 (2d Cir.2006) ("[C]lass-of-one plaintiffs must show an extremely high degree of similarity between themselves and the persons to whom they compare themselves."). "[T]to succeed on a class-of-one claim, a plaintiff must establish that (i) no rational person could regard the circumstances of the plaintiff to differ from those of a comparator to a degree that would justify the differential treatment on the basis of a legitimate government policy; and (ii) the similarity in circumstances and difference in treatment are sufficient to exclude the possibility that the defendants acted on the basis of a mistake." *Id*. (internal quotation marks omitted). *Ruston v. Town Bd. for Town of Skaneateles,* 610 F.3d 55, 59-60 (2d Cir. 2010).

In order to survive a motion to dismiss, the plaintiff must identify other similarly situated individuals who were treated differently under similar circumstances. *See e.g. Muhmmaud v. Murphy*, 632 F. Supp. 2d 171, 179 (D. Conn. 2009) (dismissing class of one equal protection claim because the plaintiff "has identified no other pretrial detainee who was discharged under similar circumstances and who was not transferred to" the

14

complained of program.").  *See also Riddick v. Arnone*, 2012 WL 2716355 (D. Conn. July 9, 2012)(attached as Exhibit D) (granting motion to dismiss when plaintiff presented evidence of no other inmates with similar disciplinary history who were treated differently under the same circumstances); *Page v. Lantz,* 2007 WL 1834519, at *6 (D. Conn. June 25, 2007)(attached as Exhibit E) (holding that class of one equal protection claim failed as a matter of law where plaintiff did not allege that similarly situated inmates were treated differently under similar circumstances); *Scruggs v. Meriden Bd. of Educ.,* 2006 WL 2715388, at *4 (D.Conn. Sept. 22, 2006)(attached as Exhibit F) (no equal protection violation established where Plaintiff failed to allege her learning disabled son was treated differently from other learning disabled students who were also harassed by classmates); *Al-Cantara v. N.Y. State Div. of Housing & Cmty. Renewal,* 2007 WL 766123, at *3 (S.D.N.Y. March 12, 2007) (attached as Exhibit G) (dismissing *Olech* claim in the landlord-tenant context where Plaintiff failed to allege he was treated differently from other tenants pursuing complaints against their landlords).

In the present case, the plaintiff fails to allege that he was treated differently than any similarly situated individual.  Rather, he makes unsupported formulaic assertions that he was treated differently than unidentified parents.  The plaintiff admits in his complaint that prior to his banishment from school events, he raised his voice at the principal and called him a liar.  In his complaint, the plaintiff does not provide even one example of a similarly situated individual who was treated more favorably than he under these same circumstances. He makes general unsupported statements that "…the defendant banned the plaintiff from all school events except commencement, a banishment never before imposed on a parent."

Complaint, Count Two, ¶ 11.  This formulaic recitation of the elements of the claim are insufficient to survive a motion to dismiss under the *Iqbal* standard.  As the plaintiff has not identified even one similarly situated individual, the claim must fail as a matter of law.

**D.** **Count Three fails given that the plaintiff has no liberty interest in attending school events and even if he did, he failed to identify and allege what process he was denied**

In Count Three, the plaintiff alleges that he has been deprived of liberty without due process of law in violation of the Fourteenth Amendment to the United States Constitution.

Procedural due process "imposes constraints on governmental decisions which deprive individuals of 'liberty' or 'property' interests within the meaning of the Due Process Clause of the Fifth or Fourteenth Amendment."  *Mathews v. Eldridge,* 424 U.S. 319, 332 (1976).  "In procedural due process claims, the deprivation by state action of a constitutionally protected interest in 'life, liberty, or property' is not in itself unconstitutional; what is unconstitutional is the deprivation of such an interest *without due process of law*."  *Zinermon v. Burch,* 494 U.S. 113, 125, 110 S.Ct. 975, 983, 108 L.Ed.2d 100 (1990) (emphasis in original).  Due Process is a "flexible concept" that "varies with the particular situation." *Id.* at 127.  Consequently, the Court must consider "two distinct issues: 1) whether plaintiffs possess a liberty or property interest protected by the Due Process Clause, and, if so, 2) whether existing state procedures are constitutionally adequate." *Kapps v. Wing,* 404 F.3d 105, 112 (2d Cir.2005). To assess whether the existing state procedures are constitutionally adequate, the Court applies the three-factor test articulated in

*Mathews v. Eldridge* which requires the Court to balance the following factors known as the "Matthews Factors":

> (1) the private interest at stake, (2) the risk of an erroneous deprivation of that interest through the procedures used and the probative value (if any) of alternative procedures, (3) the government's interest, including the possible burdens of alternative procedures

*O'Connor v. Pierson,* 426 F.3d 187, 197 (2d Cir.2005).

In the present case, the plaintiff has failed to allege that there is any liberty interest in the attendance of school events.  Even where a school board member was denied access to schools except to perform his limited function, the Second Circuit found that no liberty interest right had been violated.  *Silano v. Sag Harbor Union Free School District BOE*, 42 F.3d 719, 724 (2d Cir. 1994), cert. denied 515 U.S. 1160 (1995) ("Silano did not have an unrestricted right to enter the school classrooms or hallways.")

Assuming arguendo that plaintiff does have a liberty interest in attending school events, the Third Count still must fail.  Specifically, the plaintiff has failed to state a due process claim that is plausible on its face – the due process claims fails because plaintiff baldly alleges that he was denied due process without identifying the process he was denied. *See, e.g., Russo v. City of Hartford,* 158 F.Supp.2d 214, 232 (D.Conn.2001) (dismissing procedural due process claim where the plaintiff failed to "specifically allege what sort of process [s]he was entitled to or how it was denied"); *Fair Haven Develop. Corp. v. Destafano,* 528 F.Supp.2d 25, 31 (D .Conn.2007) ("plaintiff's procedural due process claim fails because it does not identify what sort of process FDHC was denied").  The present plaintiff has tendered the naked assertion that he was deprived of due process without

17

further factual enhancement to render his claim plausible.  The Court therefore must dismiss his procedural due process claim.  See also *Mpala v. City of New Haven*, 2013 WL 657649 (D.Conn. February 22, 2013) (attached As Exhibit H) (plaintiff failed to allege what process he was denied after being temporarily removed from a public library).

### E. <u>The plaintiff has failed to state a claim for intentional infliction of emotional distress in the Fourth Count because the conduct alleged is not extreme and outrageous.</u>

In Count Four, the plaintiff alleges that the conduct of the defendant was extreme and outrageous and was carried out for the specific purpose of inflicting emotional distress upon the plaintiff.

Liability for intentional infliction of emotional distress depends on the plaintiff's ability to establish four elements: (1) that the defendant intended to inflict emotional distress, or knew or should have known that emotional distress would result from his conduct; (2) that the defendant's conduct was extreme and outrageous; (3) that the defendant's conduct caused the plaintiff's distress; and (4) that the plaintiff's distress was severe.  *Miner v. Town of Cheshire,* 126 F.Supp.2d 184, 194 (D.Conn.2000) (quoting *Petyan v. Ellis,* 200 Conn. 243, 253, 510 A.2d 1337 (1986)).  To constitute "extreme and outrageous conduct," the action must be "so extreme and outrageous that it goes beyond all possible bounds of decency, is regarded as atrocious, is utterly intolerable in a civilized society," and causes "mental distress of a very serious kind." *Id.*

"Severe emotional distress means, ... emotional distress of such substantial quantity or enduring quality that no reasonable man in a civilized society should be expected to bear it." *Fletcher v. Warton National Life Insurance Co*., 89 Cal.Rptr. 78, 90 (1970); see

18

Restatement (Second) of Torts [§ ]46, comment j.   "[c]onduct on the part of the defendant that is merely insulting or displays bad manners or results in hurt feelings is insufficient to form the basis for an action based upon intentional infliction of emotional distress." (Citation omitted; internal quotation marks omitted.) *Appleton v. Board of Education,* 254 Conn. 205, 210-11 (2000). Similarly, the Connecticut Appellate Court has held that mere embarrassment or humiliation-indeed, even great humiliation-is an insufficient basis for claiming that one has suffered "severe emotional distress ".   *Barry v. Posi-Seal International,* Inc., 36 Conn.App. 1, 19 n. 17, *remanded for further consideration on other grounds,* 235 Conn. 901 (1995) (affirming the trial court's decision to set aside a plaintiff's verdict for intentional infliction of emotional distress because the "plaintiff's testimony ... that [her] discharge [from employment] was embarrassing and humiliating [wa]s not sufficient to indicate emotional distress-severe emotional distress").   The tenor of these decisions is that common feelings and emotions, such as hurt feelings, embarrassment and humiliation, are things we all experience in our daily lives, and thus things we must learn to live with if we are to live together in contemporary society. They do not, for that reason, reach the level of distress which "no reasonable [person] could be expected to endure ..." 1 Restatement (Second) of Torts[§] 46, comment (j).

Even assuming that Mr. Perry's actions in banning the plaintiff from school events were improper, they do not, as a matter of law, arise to level of egregious conduct required to substantiate a claim of intentional infliction of emotional distress. *See Miner v. Town of Cheshire,* 126 F.Supp.2d 184, 195 (D.Conn.2000) (holding that "insults, verbal taunts, threats, indignities, annoyances, petty oppressions or conduct that displays bad manners or

19

results in hurt feelings do not support a claim for intentional infliction of emotional distress"); *Armstrong v. Chrysler Financial Corp. and Roger Pinneault,* 1998 WL 342045, at *5 (D.Conn. May 14, 1998)(attached as Exhibit I) ("Mere insults, indignities, annoyances, or conduct that displays bad manners or results in hurt feelings, is insufficient" and therefore holding that Plaintiff failed to plausibly state claim for intentional infliction of emotional distress where employer criticized, insulted, demeaned, and embarrassed plaintiff on a daily basis).

In *Ortiz v. Browne*, 2010 WL 466002 (D.Conn. February 4, 2010) (attached as Exhibit J), the plaintiff alleged that the conduct of the defendant in yelling at her so close that saliva reached her face was outrageous. The court held that although such behavior might have been hurtful, or even caused fear, conduct on the part of the defendant that is merely insulting or displays bad manners or results in hurt feelings is insufficient to form the basis for an action based upon intentional infliction of emotional distress. *Appleton v. Bd. Of Ed. of Town of Stonington,* 254 Conn. 205, 757 A.2d 1059, 1062 (2000).

In granting summary judgment in defendants' favor on an IIED claim, the court in *Valedez v. Pertua, et al.,* 2013 WL 3388909 (Sheridan, J., June 19, 2013) (attached as Exhibit K), found the following conduct of the defendant NOT to be extreme and outrageous: (1) an allegedly unlawful eviction; (2) some shouting; (3) attempting to enter the plaintiff's residence by force; (4) detaining the plaintiff and physically restraining her, causing pain; (5) ordering the plaintiff to leave the residence; (6) attempting to pack the plaintiff's belongings and in the process, damaging or destroying some of those belongings.

In *Harris v. Queens County District Attorneys*, 2012 WL 6630034 (E.D.N.Y.

September 15, 2012) (attached as Exhibit L), plaintiff, a former DA, was denied access to the courthouse in front of her employer, was removed from a courtroom in front of her clients, was surrounded by armed guards and members of the DA's office, and laughed at by guards and members of the DA's Office.  In dismissing the plaintiff's IIED claims, the court held that carrying out of the DA Office's security order may have been excessive, inappropriate and disproportionate - assuming that defendant knew that plaintiff was not a security threat.  2010 WL 6630034 *11.  However, barring the entry to the courtroom - even in the presence of plaintiff's employer and clients - does not rise to the level of "despicable, heartless or flagrant" or by any means "utterly intolerable".  *Id.* at 11.  Further, the defendant's position required her to take action regarding any security threat, even if the action is erroneous.  *Id.*

Similarly, the defendant Perry's conduct was not utterly intolerable and outrageous.  After plaintiff was disruptive, raising his voice and calling him names, defendant had an obligation to take action to prevent further disruptions from plaintiff.  If banning a lawyer from a courtroom or ordering a person to leave his private residence is deemed not to be extreme and outrageous, it is hard to fathom how banning plaintiff from school events could ever be so categorized.[4]

## IV.   <u>CONCLUSION</u>

For all the foregoing reasons, the Court must dismiss the plaintiff's September 23, 2013 complaint in its entirety.

---

[4] And, in the present case, the plaintiff was not even banned from all school events in that he was permitted to attend commencement ceremonies.

THE DEFENDANT,
Stephen D. Perry

BY/s/ Lori Mizerak, ct 26192
Lori Mizerak
Assistant Corporation Counsel
550 Main Street, Suite 210
Hartford, CT 06103
Federal Bar No. ct26192
Telephone (860) 757-9700
Facsimile (860) 722-8114
Email : mizel001@hartford.gov

<u>CERTIFICATION</u>

        This is to certify that on , a copy of the foregoing was filed electronically and served by mail on anyone unable to accept electronic filing.  Notice of this filing will be sent by email to all parties by operation of the Court's electronic filing system or by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing.  Parties may access this filing through the Court's CM/ECF System.

John R. Williams
John R. Williams Associates, LLC
51 Elm St., Suite 409
New Haven, CT 06510


                                                     <u>/s/ Lori Mizerak, ct 26192</u>
                                                     Lori Mizerak

23