# EXHIBIT B

**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

| | | |
|---|---|---|
| **Norman Johnson**<br>Plaintiff<br>vs. | : | **CIVIL ACTION NO.**<br>**3:13cv-01531 WWE** |
| **Stephen D. Perry**<br>Defendant | : | **MARCH 18, 2015** |

**AFFIDAVIT OF DR. STEPHEN D. PERRY**

I, Dr. Stephen D. Perry, having been duly sworn, state:

1. I am over 18 years of age and I know and understand the meaning and obligation of an oath.
2. This affidavit is based on my personal knowledge.
3. I am currently the principal at Capital Preparatory School ("Capital Prep") and have held this position for over nine years.
4. I am an employee of the Hartford Board of Education.
5. Some of my responsibilities as principal include, but are not limited to, making decisions on student instruction and curriculum, supervising staff, preparing the

school budget, making decisions regarding student discipline, and possessing general supervisory authority over the school to ensure the safety of staff and students.

6. I am familiar with the above-referenced case and understand that I am completing this affidavit in support of the motion for summary judgment.

7. On or about February 7, 2013, I met with Mr. Johnson and his wife after Mr. Johnson requested a meeting and Millie Arcinegas, President of the Hartford Parent Teacher Organization, asked me to meet with the Johnsons.

8. At this meeting, Mr. Johnson stated that he did not want his daughter, Johnson, a student at Capital Prep, to play varsity basketball anymore.

9. A few days prior to the February 7, 2013 meeting, and at the request of Mr. Fulton, Capital Prep Dean of Students/Athletic Director, I met with and Mr. Fulton about ’s desire to quit the varsity basketball team, with just a few weeks of the season left, because she felt she was not getting enough play time.

10. During this prior meeting, I encouraged to consider staying on the varsity team and tried to reinforce to that she could learn and gain a lot from being part of a team; for example, if she quit, she would miss out on senior night and whatever benefits she could reap if the team won the state championship.

11. I did not pressure in any way to stay on the varsity team, nor did I ever recruit her to play basketball for Capital Preparatory School; every high school student at Capital Preparatory is required to take/participate in two sports and she was never needed to fill a roster to compete in a state championship.

12. In fact, after quit, the team won the state championship in 2013 and was ranked #1 in the state.

13. quit the varsity basketball team without penalty.

14. I did not know or anything about her abilities with respect to basketball until she became a student at Capital Prep. Her mother brought her to the school, unannounced one afternoon, asked for us to accept as a student, told me that they had pulled her out of Middletown High School (her neighborhood school), and told me that they were going to home school her.

15. I have no involvement with, interest in, or authority over which students get playing time on any of our school's eleven high school and ten middle school teams.

16. On February 7, 2013, the Johnsons came to the school unannounced and without an appointment; still, I stopped what I was doing to meet with them. When I met with the Johnsons in a conference room at Capital Prep, Mr. Johnson was irate. He yelled and cursed at me, pointed his finger at me, slammed his hands on the conference table

and jumped up from his chair towards me, called me a liar, and screamed at me, saying “Come on Steve! Let’s handle this like men!”, all because I encouraged his daughter, who was a senior, to finish out the last 2 weeks of the regular basketball season.

17. I was aware of other confrontations by Mr. Johnson with Capital Prep staff; for example, Ms. Millsaps, the girls’ varsity basketball coach, came to me a few weeks prior to the February 7, 2013 meeting. She explained that Mr. Johnson approached her after a home game about i’s lack of playing time. Coach Millsaps told me that she felt very uncomfortable because Mr. Johnson was confrontational and in her personal space as he followed her claiming that she pursued (recruited) his daughter and she was now benching her. Ms. Millsaps further explained that the confrontation occurred immediately following the game so it was in front of parents, spectators and students. Ms. Millsaps explained that she was brief in her response to Mr. Johnson stating that she felt he was inappropriate with how he was addressing her, and that a meeting could be set up to discuss any issues.

18. In addition, about one year prior to the February 7, 2013 meeting, I was at a basketball game and Mr. Johnson confronted me. He approached me and then sat extremely close to me, with his shoulder touching mine, even though the gym was

nearly empty. Mr. Johnson stated "Do you know who I am?" I said "Sir, I'm watching the game, please leave me alone." I didn't know who he was and felt his approach was completely inappropriate and confrontational. I did not speak or interact with Mr. Johnson for most of the next year.

19. I also became aware of a verbal confrontation that Mr. Johnson had with another parent at a game during the 2013 season after he told the basketball coach that she (Coach Millsaps) needed to play his daughter more. An argument ensued in the stands during the game between Mr. Johnson and one of the moms of another basketball player.

20. As a result of Mr. Johnson's behavior at the February 7, 2013 meeting, as well as his past behavior with myself and others, on or about February 10, 2013, I decided to trespass Mr. Johnson from Capital Prep and all Capital Prep events, other than graduation.

21. My intent in imposing this trespass was that it would last for the remainder of the school year. My reasoning for this length of time for the trespass was based on what I know typically happens when children graduate. Usually, after a child graduates, his/her parents rarely find cause to return to the school campus or to attend school

events. Therefore, I had an expectation and belief that there would be a natural separation upon graduation.

22. I decided to trespass Mr. Johnson for the safety of our Capital Prep staff, children and other parents.

23. In the email that I sent to Mr. Johnson informing him of the trespass, I advised him that his "verbal altercations, physical intimidation and direct threats to staff have created an unsafe environment for staff, students and other parents and will no longer be tolerated." (See email included in plaintiff's Oct. 27, 2014 discovery responses, attached to the Rule 56 Statement at Exhibit D, bate stamped pg. 024).

24. In Count One, paragraph 12 of the complaint, plaintiff alleges that after his daughter graduated, he was removed from the varsity basketball state championship game. The state championship game at Mohegan Sun occurred in March 2013 and Mr. Johnson's daughter graduated in June 2013 – so the game took place before his daughter graduated, in contrast to what he alleges in his complaint.

25. I am aware that after Mr. Johnson was trespassed from school events and before his daughter graduated, he came to a basketball game at Capital Prep. Mr. Johnson did not leave after the security personnel at the school asked him to. After Mr. Johnson refused the request of the security personnel, I asked him to leave and he did.

26. I am not aware of any other Capital Prep event that Mr. Johnson was escorted from, as he alleges in his Complaint, Count One, at paragraph 12.
27. Other than some sporting events, such as the basketball championship game at Mohegan Sun, Capital Prep events typically take place on the school grounds.
28. The trespass did not include school board meetings or events at Hartford schools other than Capital Prep.
29. Mr. Johnson came to the Capital Prep Class of 2013 graduation and fully participated.
30. Since Mr. Johnson's daughter graduated, I have witnessed his attendance at Capital Prep events, no action has been taken to remove him from these events, and his access to these events has not been limited.
31. In fact, as recently as a few weeks ago, the Johnson family attended a Capital Prep basketball game.

I have reviewed the above thirty-one paragraphs and they are true and accurate to my knowledge and belief.

Dated at Hartford, Connecticut this 18th day of March, 2015.

Dr. Stephen Perry

STATE OF CONNECTICUT )
) ss Hartford
COUNTY OF HARTFORD )

Personally appeared Dr. Stephen Perry, known to me, who made an oath to the foregoing on the date above written.

FLOR SAUCEDO
NOTARY PUBLIC
MY COMMISSION EXPIRES FEB. 28, 2016

~~Comm. of the Sup. Ct.~~
Notary Public
My Commission Expires: