**EXHIBIT E**

UNITED STATES DISTRICT COURT

DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| NORMAN JOHNSON | : | |
| VS. | : | NO. 3:13cv1531(WWE) |
| STEPHEN D. PERRY | : | FEBRUARY 22, 2014 |

**BRIEF IN OPPOSITION TO MOTION TO DISMISS**

This action was brought in the Connecticut Superior Court and removed here by the defendant because it contains allegations of federal constitutional violations. The defendant now has moved to dismiss pursuant to F. R. Civ. P. 12(b)(6) for failure to state a claim.

**The Legal Standard**

A motion to dismiss pursuant to Rule 12(b)(6) can be granted only when "it appears beyond a doubt" that a complaint fails to "state a claim to relief that is plausible on its face." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007); Ashcroft v. Iqbal, 556 U.S. 662 (2009). The motion must be decided solely on the face of the complaint. Goldman v. Belden, 754 F.2d 1059, 1065-66 (2nd Cir. 1985). "[W]hen ruling on a defendant's motion to dismiss, a judge must accept

1

as true all of the factual allegations contained in the complaint." Erickson v. Pardus, 551 U.S. 89, 94 (2007). Those alleged facts, moreover, must be considered in the light most favorable to the non-moving party. Williams v. Avco Lycoming, 755 F. Supp. 47, 49 (D. Conn. 1991). Dismissal may not be granted "unless 'it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations.'" Feiner v. SS & C Technologies, 11 F. Supp.2d 204, 207 (D. Conn. 1998), quoting I. Meyer Pincus & Associates v. Oppenheimer & Co., 936 F.2d 759, 762 (2nd Cir. 1991). "Dismissal is 'appropriate only if it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.'" E & L Consulting, Ltd. v. Doman Industries Limited, 472 F.3d 23, 28 (2nd Cir. 2006); Friedl v. City of New York, 210 F.3d 79, 83 (2nd Cir. 2000); Harris v. City of New York, 186 F.3d 243, 250 (2nd Cir. 1999); Conley v. Gibson, 355 U.S. 41, 45-46 (1957). "This rule applies with particular force where the plaintiff alleges civil rights violations...." Cruz v. Gomez, 202 F.3d 593, 597 (2nd Cir. 2000), quoting Chance v. Armstrong, 143 F.3d 698, 701 (2nd Cir. 1998). "The issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims." Scheuer v. Rhodes, 416 U.S. 232, 236 (1974); Wright v. Ernst & Young LLP, 152 F.3d 169, 173 (2nd Cir. 1998).

"Generally, while a complaint attacked by a Rule 12(b)(6) motion to

dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. Instead, factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact). What is required are enough facts to state a claim to relief that is plausible on its face. In the words of the Supreme Court's most recent iteration of this standard, '[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" Starr v. Sony BMG Music Entertainment, 592 F.3d 314, 321 (2nd Cir. 2010). (Citations, quotation marks and elipses omitted.) "Asking for plausible grounds to infer an agreement does not impose a probability requirement at the pleading stage; it simply calls for enough fact to raise a reasonable expectation that discovery will reveal evidence of [wrongdoing]. And, of course, a well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable, and that a recovery is very remote and unlikely." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 556 (2007).

Accordingly, the starting point of the analysis must be the language of the Complaint itself. In this case, the following factual allegations are made:

3

1. The plaintiff is an adult citizen of the United States who resides in Middletown, Connecticut.

2. The defendant is the Principal of Capital Preparatory Magnet School, a public school in the City of Hartford, and at all times herein mentioned was acting in his said capacity. He is sued, however, only in his individual capacity.

4. The plaintiff is the father of a daughter who was born in 1996. She enjoys playing basketball.

5. The defendant, having decided that he wanted the Capital Preparatory Magnet School to win a state girls' basketball championship, recruited the plaintiff's daughter to play varsity basketball at the school. He did so knowing fully well that she was a good basketball player but not good enough to play at a varsity championship level. However, he needed an additional girl on the team to fill out its roster; otherwise the team would not have been able to compete for the championship he desired. As a result, the plaintiff's daughter was placed on the varsity team but rarely allowed to play.

6. The plaintiff's daughter decided that she preferred to play only Junior Varsity basketball, so she could have the opportunity actually to play the game. Her parents concurred in her decision.

7. The defendant, however, pressured the plaintiff's daughter to remain on the varsity team. He summoned her to a private meeting in his office where he cajoled and badgered her and, among other things, told her that she had better suit up and that he didn't want to hear any more about it. She reported this conversation to her parents, who encouraged her to stick with her own convictions and play only Junior Varsity if that was her wish.

8. The defendant then summoned the plaintiff and his wife to a meeting. At that meeting, the plaintiff and his wife asked the defendant to stop pressuring their daughter. The plaintiff told the defendant what his daughter had reported to him and asked him directly: "Did you or did you not say to [my daughter] that she had

4

better suit up and you didn't want to hear any more about it?" The defendant replied: "Your daughter is a liar and a manipulator."

9. At that point, the plaintiff raised his voice and told the defendant he was a liar.

10. In fact, the defendant was lying and the plaintiff's daughter was telling the truth.

11. In response, the defendant banned the plaintiff from all school events except commencement, a banishment never before imposed on any parent.

12. Since that time, the defendant has continued to harass the plaintiff by having him escorted from athletic events both at the school and elsewhere. After the plaintiff's daughter had graduated in June 2013, the plaintiff attended a basketball game at the Mohegan Sun at which the Capital Preparatory Magnet School team was playing. Observing him there, the defendant instructed police to forcibly remove the plaintiff from the premises.

13. As a result, the plaintiff has suffered embarrassment, inconvenience, a loss of personal liberty, and severe emotional distress.

## Count One – Violation of Plaintiff's Right to Peaceful Assembly

The Complaint specifically alleges that the defendant has banished the plaintiff from athletic events, otherwise open to the public, conducted at the school and elsewhere. The Complaint further alleges that the reason for this banishment is the fact that, in a private meeting, the plaintiff truthfully stated to the defendant that the defendant had lied about the plaintiff's daughter.

5

The defendant points the court to Judge Hall's decision in Nowacki v. Town of New Canaan, 2013 WL 785355, in which the plaintiff had been prohibited from attending events, including school plays, at his daughter's school. *But see* Cyr v. Addison Rutland Supervisory Union, 955 F. Supp. 2d 290 (D. Vt. 2013).

This case differs from *Nowacki*, however, precisely because the plaintiff has made factual allegations demonstrating that the defendant's action in banning him from athletic events was both unreasonable and viewpoint-based. In dismissing Mr. Nowacki's First Amendment claim, Judge Hall pointed out that "the Amended Complaint fails to plausibly allege that this restricted access was not reasonable or viewpoint neutral." *Nowacki, supra*, at *7. Here, the defendant barred the plaintiff from public athletic events because the plaintiff had caught him lying about his daughter and told him so. Thus, the banishment was both unreasonable and based on the content of the plaintiff's speech. Moreover, the content of the plaintiff's speech involved a matter of great public concern, because it addressed the fact that the defendant was abusing the children in his care at a publicly-funded school solely to gain the prestige supposedly associated with fielding a winning basketball team.

**Count Two – Equal Protection**

"Class of One" equal protection claims may not be brought by employees against governmental employers.  Engquist v. Oregon Department of Agriculture, 553 U.S. 591, 128 S. Ct. 2146, 2155-57 (2008); Appel v. Spiridon, 531 F.3d 138 (2nd Cir. 2008).  Based on that fact, and citing only to a 2008 ruling by a judge in the Eastern District of New York, the defendant argues that "class of one" equal protection suits may not be maintained in the case of *any* discretionary actions by government officials.  That reasoning, however, was unequivocally rejected by the Second Circuit in a 2010 decision, holding that the exclusion of discretionary actions applies only in the governmental employment context, because employment decisions are inherently different from other sorts of decisions, being necessarily subjective to a degree that is not applicable when the government is acting as sovereign rather than as employer.  Analytical Diagnostic Labs, Inc. v. Kusel, 626 F.3d 135, 141-42 (2nd Cir. 2010).  *Cf.* Hanes v. Zurick, 578 F.3d 491, 495-96 (7th Cir. 2009).

The defendant further argues that Count Two is insufficient because it does not name other parents who were allowed to attend school athletic events, contending that "the plaintiff's formulaic recitation that he was treated differently than [*sic*] other parents is insufficient to meet the pleading standards established by *Iqbal*."  (Defendant's Brief at p. 13.)  The defendant misreads the Complaint,

7

however, The plaintiff does not claim that he was treated differently from some other parents. Rather, he expressly alleges that his banishment was "never before imposed on *any* parent." (Complaint, ¶ 11) (Emphasis supplied.) In other words, he is the ultimate in "class of one" victims. *See generally, e.g.*, Esmail v. Macrane, 53 F.3d 176 (7th Cir. 1995); Falls v. Town of Dyer, 875 F.2d 146 (7th Cir. 1989).

**Count Three – Deprivation of Liberty**

Deprivation of reputation, if accompanied by a more tangible deprivation as well (the so-called "stigma-plus" standard), constitutes a deprivation of liberty requiring a pre-deprivation hearing. *E.g.*, Patterson v. City of Utica, 370 F.3d 322 (2nd Cir. 2004); Lore v. City of Syracuse, 670 F.3d 127, 154 (2nd Cir. 2012); Hoffman v. McNamara, 630 F. Supp. 1257 (D. Conn. 1986). In this case, the plaintiff was subjected to public humiliation by the defendant, with the implication that he was a criminal or otherwise dangerous to others, while at the same time depriving the plaintiff of a right enjoyed by all members of the public to attend sporting events for which he had purchased tickets. Imposing this multifaceted deprivation upon the plaintiff, through governmental action, required a pre-deprivation hearing. That denial constituted a due process violation.

**Count Four – Intentional Infliction of Emotional Distress**

The defendant seeks to dismiss Count Four, which alleges the state common law tort of intentional infliction of emotional distress, on the ground that the conduct alleged is not sufficiently "extreme and outrageous" to be actionable.

"Whether a defendant's conduct is sufficient to satisfy the requirement that it be extreme and outrageous is initially a question for the court to determine." If "reasonable minds" could disagree on that issue, however, the matter must be determined by the jury. Hartmann v. Gulf View Estates Homeowners Association, Inc., 88 Conn. App. 290, 295 869 A.2d 275 (2005). Summary judgment is inappropriate for issues involving "motive, intent and subjective feelings and reactions," United Oil Co. v. Urban Redevelopment Commission, 158 Conn. 364, 376, 260 A.2d 596 (1969).

"Extreme and outrageous" conduct is conduct less serious and less offensive than conduct which "shocks the conscience" under the federal substantive due process standard. Oppenheim v. Gruell, 2005 WL 407594, 38 Conn. L. Rptr. 533 (2005) (Corradino, J.) Many courts have held facts no more offensive than those alleged here to be sufficiently "extreme and outrageous" to meet that element.

In Benton v. Simpson, 78 Conn. App. 746, 829 A.2d 68 (2003), a supervisor's repeatedly telling three subordinates that they "made him sick" and

9

were a "cancer" in the company not only was sufficiently extreme and outrageous to justify litigation but was sufficient to establish probable cause for a $500,000 attachment of the supervisor's personal assets. In Brown-Criscuolo v. Wolfe, 601 F. Supp. 2d 441 (D. Conn. 2009), the superintendent of schools had accused a middle school principal of illegal activity in front of teachers and staff, had accessed her electronic mail account without permission, reading a communication she had sent to her lawyer, and had forwarded that communication to his own e-mail account. In Davis v. City of Hartford, 601 F. Supp. 2d 488 (D. Conn. 2009), the plaintiff was an African-American paraprofessional who alleged that her school principal had refused to stop a white teacher from harassing her and minority students, sarcastically asked whether the plaintiff could read and implied that the plaintiff must be engaged in illegal activity to earn money. In Whelan v. Whelan, 41 Conn. Supp. 519, 588 A.2d 251 (1991), a husband had falsely told his wife he was suffering from AIDS. In Brown v. Ellis, 40 Conn. Supp. 165, 484 A.2d 944 (1984), the plaintiff's job supervisor had given him work assignments in disregard of his fear of heights. In Mellaly v. Eastman Kodak Co., 42 Conn. Supp. 17, 597 A.2d 846 (1991), the plaintiff's supervisor had taunted him about his alcoholism. In Gilman v. Gilman, 46 Conn. Sup. 21, 736 A.2d 199 (1999), the defendant had telephoned the police and falsely reported that her ex-husband was smoking marijuana in his house, at a time when she

knew he was entertaining a new girlfriend, resulting in disruption of their dinner. In Song v. Liu, 2012 WL 1759850, the court denied a motion for summary judgment in a case in which the plaintiff alleged that during one summer her former husband refused to allow their children to reside with her at any time and for a period of one month denied her visitation, in violation of a court order respecting custody and visitation.  n Nance v. M.D. Health Plan, Inc., 47 F. Supp. 2d 276 (D. Conn. 1999), the court held that an employer's questioning that signaled to others its belief that the plaintiff was a homosexual could be found sufficiently "extreme and outrageous" in the eyes of a jury to constitute a basis for a finding of intentional infliction of emotional distress.  In Caesar v. Hatford Hospital, 46 F. Supp. 2d 174 (D. Conn. 1999), the court held that an employer's acts in discriminating against the plaintiff and making false reports regarding her to the Department of Public Health were sufficiently "extreme and outrageous" to state a claim for intentional infliction of emotional distress.  An employer's awareness of racial discrimination in the workplace, coupled with an intentional failure to remedy the discrimination, is sufficiently "extreme and outrageous" to support the plaintiff's claim.  Distiso v. Town of Wolcott, 539 F. Supp. 2d 562, 570 (D. Conn. 2008).  In Kennedy v. Coca-Cola Bottling Co. of New York, Inc., 170 F. Supp. 2d 294, 298 (D. Conn. 2001), the court held that the actions of an employer in disclosing to the employees and supervisors involved in wrongdoing the

11

plaintiff's complaints that they had engaged in a variety of illegal or improper activities at the workplace, with the result that the plaintiff suffered retaliation and harassment, was conduct sufficiently "extreme and outrageous" to go to a jury. In McKelvie v. Cooper, 190 F.3d 58 (2nd Cir. 1999), the Second Circuit, applying Connecticut law, held that the alleged actions of police officers in abusing the patron of a bar during a search of the premises could be found by a jury to be sufficiently extreme and outrageous to warrant a verdict in the plaintiff's favor. In Moss v. Town of East Haven, 2001 WL 1002684, at *2 (Conn. Super. 2001), the court held that a police officer's conduct at the plaintiff's home in threatening the plaintiff "with his hand on his exposed service revolver" while not allowing the plaintiff to leave, was sufficiently "extreme and outrageous" to warrant submitting the action to a jury's determination. In Terreno v. Mott, 453 F. Supp. 2d 562 (D. Conn. 2006), the court held that a jury could reasonably find that the actions of a bail enforcement agent in making a late night invasion of the plaintiff's home and subsequently harassing the homeowner was "extreme and outrageous" enough to support an action for the intentional infliction of emotional distress. In Miles v. City of Hartford, 719 F. Supp. 2d 207 (D. Conn. 2010), the court held that making an arrest on fabricated charges constitutes "extreme and outrageous" conduct even if the arrestee did not receive a favorable termination of her criminal prosecution. In Bell v. Board of Education, 55 Conn. App. 400, 739 A.2d 321 (1999), the court

held that allegations that the defendant imposed a system of education which created a pervasive atmosphere of fear and terror in an elementary school classroom over a two-year period adequately alleged conduct which a jury could find was "extreme and outrageous". The action of a high school principal in accusing a female student of "sexual harassment" for entering the boys' lavatory when he knew that her only purpose in doing so was to retrieve money that had been stolen from her was held sufficiently "extreme and outrageous" to be submitted to a jury. Zulawski v. Stancil, 2006 WL 2089470 (Hartmere, J.). See also Baird v. Rose, 192 F.3d 462 (4th Cir. 1999), holding that the actions of a school teacher in humiliating a student in class because of her clinical depression was "extreme and outrageous" under Virginia law. In Rosten v. Circuit Wise, Inc., 1992 WL 231318, an employer discharged the plaintiff because of her union organizing activities. In Lugo v. Rodriguez, 1992 WL 10802, 5 Conn. L. Rptr. 800, 8 C.S.C.R. 244 (1992), an attorney intentionally delayed in releasing a lis pendens. Pressuring a debtor to convert an unsecured debt into one secured by a residential mortgage loan the debt collector knew was beyond the debtor's financial means was found extreme and outrageous in Richards v. United Collection Bureau, 2008 WL 4070335, 46 Conn. L. Rptr. 161. Breach of an oral agreement to restructure a loan was held sufficiently extreme and outrageous in Connecticut National Bank v. Montanari, 1994 WL 29929. Surveillance by an

insurance company to determine the validity of a claim was held sufficiently extreme and outrageous to withstand a motion to dismiss in Bosco v. MacDonald, 1995 WL 43763, 13 Conn. L. Rptr. 312.  In a similar case, the United States Court of Appeals for the First Circuit, applying Connecticut law, held that a union officer's conduct over a period of three weeks in driving by a union member's home several times a day and following him when he left his house was sufficiently extreme and outrageous to support a jury verdict in the member's favor.  Johnson v. Teamsters Local 559, 102 F.3d 21 (1st Cir. 1996).  In Desardouin v. United Parcel Service, Inc., 285 F. Sup. 2d 153, 161 (D. Conn. 2003), the court held that comments by the defendant's driver, made in the presence of the plaintiff's customers, suggesting that the plaintiff was a poor credit risk and arguably making racially demeaning references to him, could be found "extreme and outrageous" so as to survive a motion for summary judgment. Allegation that an employer condoned the verbal and possibly physical abuse of an employee by "an aggressive coworker" rose to the level of "extreme and outrageous" conduct.  Javier v. Deringer-Ney, Inc., 578 F. Supp. 2d 368, 374 (D. Conn. 2008).  An allegation that a police officer had written a letter in support of his former girlfriend, who was a fellow officer, in which he falsely asserted that a person who had brought charges against her was lying, asserted conduct that was sufficiently extreme and outrageous to survive summary judgment.  Stack v.

Jaffee, 248 F. Supp. 2d 100, 104-05 (D. Conn. 2003). A police detective's statement to the wife of a suspect that her husband was a murderer, that he killed their daughter, and that he never lover her or their daughter, was extreme and outrageous conduct within the meaning of Illinois law. Fox v. Hayes, 600 F.3d 819 (7th Cir. 2010). A cause of action for intentional infliction of emotional distress was stated in an employment context when the plaintiff alleged that his supervisor "severely harassed and mistreated [him], and created a situation where he was denied effective assistance in the performance of his job, open communication and fairness, unfairly placed on a 60-day performance improvement plan and then constructively fired." Grossman v. Computer Curriculum Corp., 131 F. Supp. 2d 299, 310-11 (D. Conn. 2000). Allegations that an employer fraudulently induced an employee, who was on medical leave, to come to the workplace on a pretense of seeking his help with a problem, when in fact the purpose was to conduct an in-person termination, set forth conduct which was "extreme and outrageous." Storm v. ITW Insert Molded Products, 400 F. Supp. 2d 443 (D. Conn. 2005). In Talit v. Peterson, 44 Conn. Supp. 490, 497-98, 692 A.2d 1322 (1997), the allegation that the defendants had subjected the plaintiff, a coworker, to unjustified criticism and caused her to lose her job for filing a grievance was held sufficiently extreme and outrageous to survive a motion to strike. Terminating an employee in retaliation for his union activities has been held to be sufficiently "extreme and

15

outrageous" to support a jury verdict and award of substantial damages for intentional infliction of emotional distress. <u>Mihalick v. Cavanaugh</u>, 26 F. Supp. 2d 391, 396 (D. Conn. 1998).

All of these cases found the conduct alleged to be such that a jury representing a fair cross-section of the community should determine whether it was "extreme and outrageous" as required by the law. Ultimately, it is a community standards test that applies. For a court to strike a complaint at the pleading stage, or to grant summary judgment prior to trial, constitutes a judicial determination as a matter of law that the alleged conduct is acceptable in our society. In any case where it is not obvious that the conduct *is* acceptable, the court should defer to the collective wisdom of the jury. <u>Faraclas v. Botwick</u>, 2002 WL 1727395, 32 Conn. L. Rptr. No. 11, 414 (2002).

## **Conclusion**

The motion to dismiss should be denied.

16

Respectfully submitted:

                 /s/
JOHN R. WILLIAMS (ct00215)
51 Elm Street
New Haven, CT 06510
203.562.9931
Fax: 203.776.9494
jrw@johnrwilliams.com
His Attorney

CERTIFICATION OF SERVICE

On the date above stated, a copy of the foregoing was filed electronically and served by mail on anyone unable to accept electronic filing. Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing system or by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing. Parties may access this filing through the Court's CM/ECF System.

                 /s/
JOHN R. WILLIAMS