UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

NORMAN JOHNSON,                  :
    Plaintiff,                  :
                                  :
v.                               :         3:13-cv-01531-WWE
                                  :
STEPHEN D. PERRY,                :
    Defendant.                  :

## MEMORANDUM OF DECISION ON DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

This is an action by a father of a former student against a high school principal stemming from the father's banishment from school property and school sponsored events. Plaintiff alleges violation of his First Amendment right of peaceful assembly and intentional infliction of emotional distress. Plaintiff's due process claim was previously dismissed by the Court.

Defendant has moved for summary judgment on both remaining counts. For the following reasons, defendant's motion will be denied. In addition, the Court will revive plaintiff's due process claim.

### BACKGROUND

Defendant Stephen Perry was the principal of Capital Preparatory School at all times relevant to the complaint. Defendant is an employee of the Hartford Board of Education.

Plaintiff alleges that defendant deprived him of his right to peaceful assembly in violation of the First Amendment when defendant banned plaintiff from all school events except commencement. Plaintiff further alleges that defendant's ban was extreme and outrageous and was carried out for the specific purpose of inflicting emotional distress on plaintiff.

Defendant, as principal, possessed general supervisory authority over the school to ensure the safety of staff and students.

Prior to February 7, 2013, plaintiff's daughter met with defendant to express her desire to discontinue with the varsity basketball program due to lack of playing time.

On February 7, 2013, defendant met with plaintiff, plaintiff's wife, and plaintiff's daughter in a conference room at school.  Millie Arcinegas, President of the Hartford Parent Teacher Organization, was also present.  The parties discussed the daughter's participation in varsity basketball.  During the meeting, emotions flared.  Plaintiff raised his voice and banged his hand on the table.

Prior to the meeting, plaintiff had confronted the varsity basketball coach multiple times about his daughter's lack of playing time.

Based on plaintiff's conduct, defendant decided to ban plaintiff from the school and its events, with the exception of commencement.  Defendant informed plaintiff by letter, which stated:

> Dear Mr. Norman Johnson,
>
> This letter is to inform you that as of February 10, 2013, you are [banned] from the Capital Preparatory Magnet School and its events, (including but not limited to sports both on and off campus), with the exception of commencement exercises on May 31, 2013; after which the [ban] will be reinstated.  Disregarding this correspondence by coming to school grounds or to an event in which Capital Prep is a participant[] will result in your immediate removal.
>
> Your verbal altercations, physical intimidation and direct threats to staff have created an unsafe environment for staff, students and other parents and will no longer be tolerated.
>
> A copy of this letter is being sent to the Hartford Board of Education and the Hartford Police Department as well as other communities and venues where the Capital Preparatory Magnet School's activities may occur.
>
> We appreciate your attention to this matter and expect your full cooperation.
>
> Regards,
>
> Dr. Stephen Perry, MSW
> Principal
> The Capital Preparatory Magnet School

Plaintiff indicates that as a result of the ban, he and his family suffered embarrassment and harassment. He was not permitted to support his daughter in any of her scholastic endeavors. Subsequently, plaintiff was told to leave Capital Prep basketball games when he was recognized there by school authorities, including defendant.

Plaintiff has not sought medical treatment in connection with his emotional distress.

## DISCUSSION

A motion for summary judgment will be granted where there is no genuine issue as to any material fact and it is clear that the moving party is entitled to judgment as a matter of law. Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).  "Only when reasonable minds could not differ as to the import of the evidence is summary judgment proper."  Bryant v. Maffucci, 923 F.2d 979, 982 (2d Cir.), cert. denied, 502 U.S. 849 (1991).

The burden is on the moving party to demonstrate the absence of any material factual issue genuinely in dispute. American International Group, Inc. v. London American International Corp., 664 F.2d 348, 351 (2d Cir. 1981). In determining whether a genuine factual issue exists, the court must resolve all ambiguities and draw all reasonable inferences against the moving party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986).

If a nonmoving party has failed to make a sufficient showing on an essential element of his case with respect to which he has the burden of proof, then summary judgment is appropriate. Celotex Corp., 477 U.S. at 323. If the nonmoving party submits evidence which is "merely colorable," legally sufficient opposition to the motion for summary judgment is not met. Anderson, 477 U.S. at 249.

**First Amendment**

"The right of peaceable assembly is a right cognate to those of free speech and free press and is equally fundamental." De Jonge v. State of Oregon, 299 U.S. 353, 364 (1937).

A school is generally considered a nonpublic forum, as it is a property that is not traditionally open to the public for communication. DeFabio v. E. Hampton Union Free Sch. Dist., 658 F. Supp. 2d 461, 473 (E.D.N.Y. 2009). "[T]he government enjoys greater latitude in restricting speech in a nonpublic forum and may limit access or content based on subject matter and speaker identity so long as the distinctions drawn are reasonable in light of the purpose served by the forum and are viewpoint neutral." Byrne v. Rutledge, 623 F.3d 46, 54 (2d Cir. 2010). However, "there is no categorical rule that the interests of a school in safety and order always outweigh constitutional rights." Cyr v. Addison Rutland Supervisory Union, 955 F. Supp. 2d 290, 294 (D. Vt. 2013). While "[i]t is clear a public school has a compelling interest in maintaining order and ensuring safety on its grounds . . . [and that this interest] may justify constitutional infringements, including restrictions on the First Amendment rights of parents and other members of the public," such restrictions must be reasonable. Id.

Here, defendant argues that the ban was reasonable and viewpoint neutral because it was justified by defendant's concern that plaintiff posed a danger to the staff and children at the school. However, whether plaintiff posed a danger to staff and children at the school is a disputed fact. Equally disputed is whether defendant banned plaintiff from school property based on a disagreement with the message plaintiff was conveying. That plaintiff's comments may have caused discomfort on the part of school staff, or may have been the subject of disagreement cannot justify governmental restriction or suppression based on those comments. See Tinker v.

4

Des Moines Independent Community School Dist., 393 U.S. 503, 509 (1969) ("In order for the State in the person of school officials to justify prohibition of a particular expression of opinion, it must be able to show that its action was caused by something more than a mere desire to avoid the discomfort and unpleasantness that always accompany an unpopular viewpoint.").

Defendant argues in the alternative that plaintiff has no First Amendment right to attend school events. Although the First Amendment does not guarantee unfettered access to school grounds, this argument cannot trump the requirement that restrictions on assembly and speech be reasonable and viewpoint neutral without erasing it. Accordingly, summary judgment will be denied as to plaintiff's First Amendment Claim.

**Intentional Infliction of Emotional Distress**

Defendant argues that plaintiff's IIED claim should be dismissed because (1) defendant's conduct was not extreme and outrageous and (2) plaintiff did not suffer extreme emotional distress.

"Whether a defendant's conduct is sufficient to satisfy the requirement that it be extreme and outrageous is initially a question for the court to determine. Only where reasonable minds disagree does it become an issue for the jury." Hartmann v. Gulf View Estates Homeowners Ass'n, Inc., 88 Conn. App. 290, 295 (2005).

Resolving all ambiguities and drawing all reasonable inferences in plaintiff's favor, the Court finds that reasonable minds could disagree on whether defendant's conduct was extreme and outrageous. Indeed, plaintiff contends that he was forbidden from merely picking his daughter up and dropping her off outside the school building - allegedly based on the content of his speech that offended defendant. Defendant denies the allegation, but ultimately, the contested

factual background and motivations at issue are best determined by a jury.

The Court also finds that plaintiff's descriptions of his emotional distress should be evaluated by a jury. Defendant faults plaintiff for the lack of a medical treatment record, but the Supreme Court of Connecticut has held that such an "argument wrongly assumes that the plaintiff was required to present more than his own testimony to prevail on [his IIED count]." Berry v. Loiseau, 223 Conn. 786, 807 (1992). Accordingly, summary judgment will be denied as to plaintiff's IIED claim.

**Due Process**

The Court granted defendant's motion to dismiss plaintiff's due process claim [Doc. #15] after plaintiff failed to convince the Court with his argument that banishment from "public sporting events" required a pre-deprivation hearing. Plaintiff argued that such a tangible deprivation combined with harm to his reputation satisfied the so called "stigma-plus" standard. See Patterson v. City of Utica, 370 F.3d 322, 330 (2d Cir. 2004). Under the "stigma-plus" standard,

> as a result of the state action complained of, a right or status previously recognized by state law [must be] distinctly altered or extinguished. It was this alteration, officially removing the interest from the recognition and protection previously afforded by the State, which we found sufficient to invoke the procedural guarantees contained in the Due Process Clause of the Fourteenth Amendment.

Paul v. Davis, 424 U.S. 693, 711 (1976).

The Court dismissed plaintiff's due process claim without prejudice to amend his complaint to add allegations that attendance at school events is a right protected by law. Plaintiff declined to amend, but the Court now holds, *sua sponte,* that plaintiff's complaint, which alleges that defendant banned plaintiff from all school events, except commencement, implicated the

fundamental right of a parent to make decisions concerning the care, custody, and control of his child.  See Troxel v. Granville, 530 U.S. 57, 66 (2000).  The Court was mistaken to dismiss plaintiff's due process claim, as defendant's actions deprived plaintiff of a recognized liberty interest.

> The liberty interest at issue in this case—the interest of parents in the care, custody, and control of their children—is perhaps the oldest of the fundamental liberty interests recognized by this Court. More than 75 years ago, in *Meyer v. Nebraska*, (1923), we held that the "liberty" protected by the Due Process Clause includes the right of parents to "establish a home and bring up children" and "to control the education of their own." Two years later, in *Pierce v. Society of Sisters*, (1925), we again held that the "liberty of parents and guardians" includes the right "to direct the upbringing and education of children under their control." We explained in *Pierce* that "[t]he child is not the mere creature of the State; those who nurture him and direct his destiny have the right, coupled with the high duty, to recognize and prepare him for additional obligations." We returned to the subject in *Prince v. Massachusetts*, (1944), and again confirmed that there is a constitutional dimension to the right of parents to direct the upbringing of their children. "It is cardinal with us that the custody, care and nurture of the child reside first in the parents, whose primary  function and freedom include preparation for obligations the state can neither supply nor hinder."
>
> In subsequent cases also, we have recognized the fundamental right of parents to make decisions concerning the care, custody, and control of their children. *See*, *e.g.*, *Stanley v. Illinois*, (1972) ("It is plain that the interest of a parent in the companionship, care, custody, and management of his or her children 'come[s] to this Court with a momentum for respect lacking when appeal is made to liberties which derive merely from shifting economic arrangements' "); *Wisconsin v. Yoder*, (1972) ("The history and culture of Western civilization reflect a strong tradition of parental concern for the nurture and upbringing of their children. This primary role of the parents in the upbringing of their children is now established beyond debate as an enduring American tradition"); *Quilloin v. Walcott*, (1978) ("We have recognized on numerous occasions that the relationship between parent and child is constitutionally protected"); *Parham v. J. R.*, (1979) ( "Our jurisprudence historically has reflected Western civilization concepts of the family as a unit with broad parental authority over minor children. Our cases have consistently followed that course"); *Santosky v. Kramer*, (1982) (discussing "[t]he fundamental liberty interest of natural parents in the care, custody, and management of their child"); *Glucksberg, supra*, ("In a long line of cases, we have held that, in addition to the specific freedoms protected by the Bill of Rights, the 'liberty' specially protected by the Due Process Clause includes the righ [t] ... to direct the education and upbringing of one's children" (citing *Meyer*

> and *Pierce*)). In light of this extensive precedent, it cannot now be doubted that the Due Process Clause of the Fourteenth Amendment protects the fundamental right of parents to make decisions concerning the care, custody, and control of their children.

Troxel v. Granville, 530 U.S. at 65-66 (internal citation omitted).

Banning a parent from his child's public school infringes upon the parent's constitutional liberty interest in directing the education of his child. Although the State has authority to restrict school access to ensure a safe and productive environment, it may not so significantly prohibit an individual parent from normal school access without affording the parent a fundamentally fair opportunity to contest the State's asserted reasons for doing so.

At a minimum, due process requires notice and an opportunity to be heard "at a meaningful time and in a meaningful manner." Mathews v. Eldridge, 424 U.S. 319, 333 (1976). The Supreme Court has described the "root requirement of the Due Process Clause as being that an individual be given an opportunity for a hearing *before* he is deprived of any significant [liberty or] property interest." Cleveland Bd. Of Educ. v. Loudermill, 470 U.S. 532, 542 (1985).

Accordingly, plaintiff's due process count is revived. The parties may submit a revised case management schedule if necessary for additional discovery or dispositive motion practice on this count.

**Qualified Immunity**

"[G]overnment officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have

known." Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982).

Defendant bears the burden of proving that he is entitled to qualified immunity. Huminski v. Corsones, 396 F.3d 53, 80 (2d Cir. 2004). "Where there are no genuinely disputed factual issues material to the qualified immunity defense, a defendant may move for summary judgment dismissing the plaintiff's claim on that basis." Vincent v. Yelich, 718 F.3d 157, 167 (2d Cir. 2013).

Construing the evidence in the light most favorable to plaintiff, there is a genuine issue of material fact as to whether defendant violated plaintiff's constitutional rights. See Huminski, 396 F.3d at 80. "If there is such a genuine issue of material fact that, if decided in favor of [plaintiff], would establish a violation of one of his constitutional rights, we must then address the extent to which the right may have been clearly established at the time of the defendants' acts in question." Id.

> In order for a constitutional right to be clearly established, "[t]he contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Anderson v. Creighton*, 483 U.S. 635, 640 (1987). This does not mean that there must be a factual equivalency between the case at issue and prior cases. The "salient question" instead is whether the case law at the time in question would have put reasonable officers on "fair warning" that their conduct violated the plaintiff's rights. *Hope v. Pelzer*, 536 U.S. 730, 741, (2002).
>
> In performing this analysis we consider, "(1) whether the right in question was defined with 'reasonable specificity'; (2) whether the decisional law of the Supreme Court and the applicable circuit court support the existence of the right in question; and (3) whether under preexisting law a reasonable defendant official would have understood that his or her acts were unlawful." *Ying Jing Gan v. City of N.Y.*, 996 F.2d 522, 532 (2d Cir.1993).

Matusick v. Erie County Water Authority, 757 F3d 31, 60 (2d Cir. 2014).

Here, too, defendant's qualified immunity defense fails at the summary judgment stage because it turns on disputed issues of fact material to the defense.

9

The qualified immunity analysis involves relating the legal standard of conduct to the facts established by the evidence in the case at hand.  Clearly, the decisional law of the Supreme Court and the Second Circuit support the existence of the constitutional rights at issue.  Whether the right in question was defined with reasonable specificity and whether under preexisting law a reasonable defendant would have understood that his acts were unlawful depends on the level of factual specificity applied to the analysis.  In this case, these questions also turn on credibility assessment and resolution of factual disputes.

The constitutional rights applicable to this case have been clearly established when described at the most general level.  Viewed in the light most favorable to plaintiff, a narrow view of the facts also establishes that plaintiff's rights were defined with reasonable specificity under existing law such that a reasonable official would have understood that his acts were unlawful.

Indeed, plaintiff's First Amendment rights would be violated if defendant banned plaintiff from participation in his daughter's public school education merely because defendant disagreed with plaintiff's viewpoint or because of arbitrary bias.  Plaintiff's due process rights would be violated if such a ban were implemented without an opportunity to be heard at a meaningful time and in a meaningful manner.  This is the story that plaintiff will tell.  Defendant will contend that, in his opinion, plaintiff's intimidating behavior was so threatening that defendant's decision to implement such a ban was reasonable, viewpoint neutral, and undeserving of "some kind of hearing" prior to the deprivation of plaintiff's liberty interest.  See Loudermill, 470 U.S. at 542.

As genuinely disputed factual issues material to the qualified immunity defense exist, qualified immunity will be denied.

## CONCLUSION

For the foregoing reasons, defendant's motion to dismiss [Doc. # 21] is denied. Plaintiff's due process claim is revived. The parties may submit a revised case management schedule within 14 days to allow for further discovery or additional dispositive motion practice on the due process count. Otherwise, the case will be set down for trial in February 2016.

Dated this 21st Day of October, 2015, at Bridgeport, Connecticut.


    /s/Warren W. Eginton
WARREN W. EGINTON
SENIOR UNITED STATES DISTRICT JUDGE